EDWARD T. BLANKENSHIP ET AL., Appellants, v. CASSIE RATCLIFF, Administratrix, ET AL.—73 S. W. (2d) 183.

Division One, June 12, 1934.

*James S. Simrall* and *Lawson & Hale* for appellants.

*Harris L. Moore & Son* and *D. H. Frost* for respondents.

FERGUSON, C.—Suit in equity to establish and specifically en-

force an alleged contract relating to the disposition, after death, of the property and estate of Martha Blankenship, a single and unmarried woman, who died, intestate, at Clinton County, Missouri, September 23, 1929. Money in the sum of $8129.83 constituted the whole of the property owned by Martha Blankenship at the time of her death. The plaintiffs, two of her brothers, and the defendants, three brothers, two sisters, and nephews and nieces, are all of her heirs at law. The two brothers who bring this suit seek to enforce an alleged oral contract which they claim was made and entered into between them and their sister, Martha, that upon her death they were to have and take any property of which she died seized and possessed to the exclusion of her other heirs at law who are made defendants herein. The trial chancellor found the issues for defendants and entered a decree and judgment accordingly and dismissed plaintiffs' bill; from which judgment plaintiffs appeal.

The other brothers and sisters having married, left the parental home and established their own separate homes, we find the plaintiffs, Ed and O'Kelly Blankenship, and the sister Martha unmarried and continuing to reside with their father on a farm, in Clinton County, owned by their father, until about 1913 when the farm was sold and a residence purchased in Cameron, the title to which was vested in Ed, O'Kelly and Martha as joint tenants. The father and Ed, O'Kelly and Martha moved from the farm to this residence and the father made his home, with the three children, until his death in July, 1914. The sister and two brothers never married and continued to reside together at this home until Martha's death in September, 1929. Martha was the eldest of the family, being seventy-one years of age at time of her death. The occupation followed by plaintiffs Ed and O'Kelly after moving, in 1913, from the farm to the residence in Cameron does not clearly appear. The sister Martha was the housekeeper and the three made their home together. Some time in 1928 an aunt of these Blankenship brothers and sisters died, testate, in the state of California. By her will she bequeathed a legacy in money to each of these brothers and sisters. It seems, however, the bequest to Martha was in a larger amount than the bequest to the others. In November, 1928, a payment was received upon these legacies. Martha received $2690.66, which was deposited, on November 27, 1928, to her credit in the First National Bank at Liberty. The amount received at that time by Ed and O'Kelly respectively was not shown but apparently was deposited by each to his individual account in the same bank. On the same day a check in the amount of $190.66 was drawn against Martha's account leaving a balance of $2500 to her credit. No further withdrawals were made from her account until May 29, 1929, when the full balance of $2500 was withdrawn and on that same date $500 was withdrawn from the account

of one of the plaintiffs and $747.70, from the account of the other. These three amounts aggregating $3747.70 were then, and on the same date, deposited in the same bank to the credit of ''Ed Blankenship or Keller Blankenship or Martha Blankenship, or the survivor.'' The transaction seems to have been handled by Ed Blankenship. O'Kelly was generally known and spoken of as ''Keller.'' Some time in July, 1929, Martha was ''stricken with paralysis,'' her mind was affected, and O'Kelly in the same month filed an information in the probate court that she was of unsound mind. An inquiry was had and she was found and adjudged to be of unsound mind and incapable of managing her affairs and Charles N. Stucker was appointed as her guardian. On August 29, 1929, plaintiff, Ed Blankenship drew a check payable to himself, on the joint account of Ed or Keller or Martha Blankenship or the survivor for the full amount of the joint account, $3747.70 and then redeposited that amount in the same bank to the credit of ''Ed Blankenship and Keller Blankenship or the survivor.'' That money is not involved in this suit and no claim thereto, or any part thereof, is made by any of the defendants. Following the appointment of the guardian a second (an apparently final) payment was made upon the legacies bequeathed by the deceased aunt and the sum of $8,209.22 due Martha was received by the guardian and retained by him until her death, September 23, 1929. On September 27, 1929, the sister Cassie M. Ratcliff, one of the defendants, was appointed administratrix of the estate and the balance of the money held by the guardian, $8129.83, was turned over to the administratrix. Certain claims against the estate for expenses of the last illness were paid by the administratrix and claims for burial expenses had been filed but not allowed and paid at the time of the trial.

The bill or petition states the date of the death of Martha Blankenship and that ''she left surviving her as her sole and only heirs at law,'' the two plaintiffs, ''who were her brothers,'' and the defendants, Sterling Blankenship, Marion Blankenship and John Blankenship (brothers), Daisy Bing and Cassie Ratcliff (sisters); the ''only descendants and heirs at law of Thomas Blankenship deceased'' (a brother), who are named, and ''the sole and only heirs at law of Annie Blankenship Smart, deceased'' (a sister), who are also named. Thus it will be seen that, in the absence of any valid and enforceable testamentary disposition of her property, Martha Blankenship, having died intestate, property possessed by her at the time of her death, which was, as we have noted, a sum of money in the amount of $8129.83, would pass, subject to the payment of debts against her estate and costs of administration, under the Statute of Descents and Distributions, to her heirs at law above set forth so that upon dis-

tribution there would be nine equal full shares and each plaintiff entitled, upon such distribution, to one-ninth of the net estate.

The bill depicts the affection and cooperation existing, over a long period of time, between plaintiffs and their sister Martha and alleges that "it became and was the wish, will and desire of the said Martha Blankenship that these plaintiffs . . . should have and receive and be the sole recipients of all her money and property to the exclusion of all her other heirs at law . . . and that it was *likewise* the wish, will and desire of these two plaintiffs that the said sister . . . should, in the event of and upon the death of these plaintiffs, or either of them, have and receive and be the sole owner of all their money and property, of whatsoever kind, to the exclusion of all their other heirs at law." It is next alleged, that "in pursuance to and for the purpose of carrying out and executing the aforesaid mutual wishes and desires of the plaintiffs and the said Martha Blankenship with reference to the disposition and distribution of their respective property and estate owned by and belonging to each of them and which might be acquired by them in the future the plaintiffs and the said Martha Blankenship on or about the —— day of July, 1914, and on or about the —— day of September, 1925, and on or about the —— day of ————, 1929, (said agreement being reaffirmed on said later dates) made and entered into a contract, understanding and agreement by and between themselves and that by the terms and provisions of said contract the said Martha Blankenship promised and agreed with plaintiffs that *in consideration of a like promise* and mutual agreement of the plaintiffs to her that she *would* give, transfer and convey to them all of her money, property, and estate which she then owned or would own at the time of her death, and all of the property and money which she might inherit; or which would come to her, as an heir at law of her said aunt in California, namely, Angie Orchard. The plaintiffs at all times lived up to and fully performed all of their part and duties under the terms and provisions of said contract and agreement and did agree to give to the said sister, Martha Blankenship, all of their property of whatever kind or character and any and all moneys or property which they might become the owner of as heirs at law of the said aunt, Angie Orchard, and *owned by them at the time of their death*, to the said sister, Martha, in the event she survived them, or either of them." (Italics ours.) The bill sets out the appointment of the guardian and that he took into his possession the property of the said Martha Blankenship composed of the sum of money, above mentioned, last received from the estate of the aunt in California and that upon her death her sister Cassie Ratcliff "was duly appointed, constituted and qualified . . . as the administratrix of the estate of the said Martha Blankenship, deceased," and that as such admin-

istratrix she "has received from" the guardian said sum of money and "now holds said funds in her possession and custody." The administratrix as such is made a party defendant. The prayer of the petition is that it be adjudged that plaintiffs are "entitled to the immediate possession of" said "moneys;" that the administratrix "be ordered, directed and required to pay all of said moneys . . . to plaintiffs;" and that "defendants be adjudged to have no right, title or interest in or to any of the aforesaid moneys . . . so belonging to the said Martha Blankenship at the time of her death."

Plaintiffs' claim, set forth in their bill, relates solely to the sum of money belonging to, and constituting the sole property of, Martha Blankenship at the time of her death received by the administratrix from the guardian, being $8129.83, and which, as we have stated, was the balance of the sum received by the guardian as due to Martha from the estate of her deceased aunt. It is not contended that Martha possessed any other property at the time of her death. It is stated that the residence property in Cameron was owned jointly by plaintiffs and Martha and so conveyed that title thereto passed to the survivors or survivor. Defendants make no claim of title to or interest in that property and plaintiffs' brief says: "The title to the home in Cameron was conveyed to and held by them in survivorship." Defendants referring to the sum of money received by the administratrix from the guardian say: "That is the only matter in controversy."

Plaintiffs' bill does not allege that a joint interest in this sum of money was ever transferred, assigned or conveyed to them and that as joint tenants they were entitled to same by survivorship as owners thereof. On the contrary the bill states that it was the mutual "wish, will and desire" of plaintiffs and their sister Martha that upon the death of either the survivors should "receive and be the sole recipients" of all the "money or property" of the one dying "to the exclusion of" all other heirs at law and that pursuant to and "for the purpose of carrying out and executing" such "mutual wishes and desires . . . with reference to the disposition and distribution of their respective property" they "made and entered into a contract, understanding and agreement" whereby the plaintiffs agreed to give to Martha "all of their property of whatever kind or character . . . owned by them at the time of their death in the event she survived them or either of them" and she on her part "promised and agreed . . . she *would* give, transfer and convey to them" all of her money and property "which she then owned or would own at the time of her death." It is not claimed that the contract was reduced to writing, an alleged oral agreement being relied upon. It appears that Martha never executed a will or writing of any kind nor did she in any manner provide for the disposition after death

of the sum of money here involved and which she owned at the time of her death.

Plaintiffs by this suit seek to establish an oral contract of the character alleged to have been entered into and to have specific performance thereof enforced and the defendants, the other heirs at law of their deceased sister, excluded from sharing in the distribution, under the statute, of this property owned by Martha at her death. Thus the plaintiffs pray a court of equity to give effect to the alleged promise of Martha that she would give them any property which she would own at the time of her death to the exclusion of all of her other heirs at law. This situation presents a question as to our jurisdiction of the appeal herein. Our jurisdiction is dependent wholly upon the ground that the amount in dispute exceeds the sum of $7500; that being the only possible ground of our jurisdiction which the record suggests. In a suit of this character, the amount in dispute "must be determined by the value in money of the relief to the plaintiff, or of the loss to the defendant, should the relief be granted, or vice versa, should the relief be denied." [Joe Dan Market, Inc., v. Wentz, 321 Mo. 943, 13 S. W. (2d) 641; Consolidated School District v. Gower Bank (Mo.), 53 S. W. (2d) 280.] And it must affirmatively appear from the record that the amount in dispute is in excess of $7500, which is the minimum of our pecuniary jurisdiction. [City of Doniphan v. Cantley, 330 Mo. 639, 50 S. W. (2d) 658.] The value and amount of the estate of Martha Blankenship, deceased, as we have noted, is $8129.83, and that is first subject to debts and costs of administration. As heirs at law of the deceased sister plaintiffs are, under the statute, entitled, upon distribution, each to a one-ninth interest therein, or two-ninths thereof, but by virtue of the alleged contract they claim they are entitled to take the full estate to the exclusion of the other heirs at law. Clearly the amount in dispute herein is the value in money of the other seven-ninths interest in the net estate remaining after the payment of debts and costs of administration, which is the sole matter in controversy, and it is, at once, apparent that value is less than $7500. It follows that we do not have jurisdiction of the appeal and the cause must be transferred to the proper Court of Appeals.

It is therefore ordered that this cause be, and it hereby is, transferred to the Kansas City Court of Appeals. *Sturgis* and *Hyde*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.